IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Craig B. Shaffer**

Civil Action No. 01-cv-01315-REB-CBS

LEONARD BALDAUF,

     Plaintiff,

v.

JOHN HYATT, *et al.*,

     Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**Magistrate Judge Craig B. Shaffer**

     The matters before the court are Defendants' Jurisdictional Brief [#65], filed

September 12, 2005, Plaintiff's Jurisdictional Brief [#68], filed September 14, 2005, and

Defendants' Response to Plaintiff's Jurisdictional Brief [#70], filed September 29, 2005.

     The court has reviewed the Briefs, the exhibits, the entire case file, and the

applicable law and is sufficiently advised in the premises.  For the reasons discussed

below, it is recommended this court find and conclude that it has jurisdiction over

Plaintiff's claims, and that those claims are not barred by the ***Heck*** doctrine.  Further, it

is recommended that this court deny Defendants' request to certify this issue under

**C.A.R. 21.1.**

**I.    Background.**

     On July 11, 2001, Plaintiff, an inmate incarcerated by the Colorado Department

of Corrections ("DOC"), filed his Complaint alleging claims against the Defendants

pursuant to **42 U.S.C. § 1983** for violations of his constitutional rights.  On November 19, 2001, all of the Defendants, except Nelson, who was never served with Plaintiff's Complaint, filed a Motion to Dismiss.  Defendants argued, *inter alia*, that Plaintiff's claims were barred by the ***Heck*** doctrine because the claims represented an improper collateral attack on Plaintiff's convictions under the Code of Penal Discipline ("COPD").  ***See Heck v. Humphrey,*** 512 U.S. 477 (1994).

On March 3, 2003, this court issued a Recommendation [#30], which recommended denying Plaintiff's Motion to Amend Complaint and granting the Defendants' Motion to Dismiss.  The Recommendation concluded that ***Heck*** precluded Plaintiff's claims.  Plaintiff filed an Objection [#31] to the Recommendation.  On March 25, 2003, the district judge accepted this court's Recommendation and denied the Plaintiff's Motion to Amend Complaint and granted the Defendants' Motion to Dismiss.  Judgment entered in favor of the Defendants on March 27, 2003.   Plaintiff filed a Notice of Appeal [#34] on April 24, 2003.  On January 26, 2005, the United States Court of Appeals for the Tenth Circuit issued an Order and Judgment on the Plaintiff's appeal.  The Tenth Circuit Order and Judgment, in pertinent part, states as follows:

> As the parties agree, the threshold issue before us is whether the ***Heck*** doctrine, see ***Heck v. Humphrey,*** 512 U.S. 477 (1994), bars jurisdiction in this case.  Whether ***Heck*** applies depends on whether deprivation of good-time or earned-time credits necessarily affects the duration of a Colorado prisoner's confinement.  The record is inadequate to resolve this matter, and both counsel at oral argument sought remand to the district court for development of the record.  Accordingly, we REMAND to the district court for further proceedings concerning whether, under the ***Heck*** doctrine, the district court has jurisdiction to hear Mr. Baldauf's claims.  If the court determines that it has jurisdiction, it should decide the merits, conducting any further proceedings that it deems necessary.

2

On remand to this court by the Tenth Circuit, a status conference was held on August 10, 2005. This court directed the parties to submit jurisdictional briefs on the *Heck* issue raised by the Tenth Circuit's remand. Before the court are the parties' briefs.

## II.    Standard of Review.

The *Heck* doctrine implicates this court's subject matter jurisdiction. *See, e.g., Fritz v. Colorado,* 223 F. Supp. 2d 1197, 1199-1203 (D. Colo. 2002); *Murphy v. Martin,* 343 F. Supp. 2d 603, 609 & n.1 (E.D. Mich. 2004); *Hawkins v. City of Greenville,* 101 F. Supp. 2d 1356, 1361 n.2 (M.D. Ala. 2000). As such, this court reviews the applicability of *Heck* to the instant case pursuant to FED. R. CIV. P. 12(b)(1). *Fritz,* 223 F. Supp. 2d at 1199-1203. A party challenging a federal court's jurisdiction need not accept the factual allegations of the complaint as true. Instead, a "party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction is based." *Stuart v. Colorado Interstate Gas Co.,* 271 F.3d 1221, 1225 (10th Cir. 2001); *Raccoon Recovery, LLC v. Navoi Mining & Metallurgical Kominat,* 244 F. Supp. 2d 1130, 1136 (D. Colo. 2002). A court reviewing its jurisdiction pursuant to FED. R. CIV. P. 12(b)(1) "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Pringle v. United States,* 208 F.3d 1220, 1222 (10th Cir. 2000); *Holt v. U.S.,* 46 F.3d 1000, 1003 (10th Cir. 1995). Consideration of matters outside the pleadings pursuant to FED. R. CIV. P. 12(b)(1) does not convert the motion to a motion for summary judgment pursuant to FED. R. CIV. P. 56. *Stuart,* 271 F.3d at 1225.

3

III.    **Analysis.**

A.    ***Heck*** **Doctrine.**

Defendant contends that Plaintiff's **42 U.S.C. § 1983** claims are barred by ***Heck***

***v. Humphrey,*** 512 U.S. 477 (1994), and its progeny because they represent an

improper collateral attack on Plaintiff's conviction for violation the Code of Penal

Discipline.  Plaintiff's April 21, 1999, and July 29, 1999, COPD convictions precluded

his ability to obtain earned time for May, June, July, August, and September 1999.

Under Colorado law, an offender's receipt of earned time reduces the sentence the

offender will ultimately have to serve.  According to Defendant, the impact of Plaintiff's

COPD convictions under Colorado law therefore, directly impacts the length of his

sentence of incarceration.  Therefore, according to Defendant, Plaintiff's **42 U.S.C. §**

**1983** claims are barred  under ***Heck*** and its progeny, and this court lacks jurisdiction to

consider his claims as a matter of law.

In ***Heck,*** the Court held that a § 1983 claim challenging the constitutionality of a

conviction or sentence could not be brought until the conviction is invalidated, which

has become known as the "favorable termination" requirement.  ***See, e.g., Beck v. City***

***Muskogee Police Dep't,*** 195 F.3d 553, 556-57 (10th Cir. 1999).  Specifically, the ***Heck***

court held:

> ...in order to recover damages for allegedly unconstitutional
> conviction or imprisonment, or for other harm caused by actions whose
> unlawfulness would render a conviction or sentence invalid, a § 1983
> plaintiff must prove that the conviction or sentence has been reversed on
> direct appeal, expunged by executive order, declared invalid by a  §
> 235(b)(3) tribunal, authorized to make such determination, or called in to
> question by a federal court's issuance of a writ of habeas corpus, **28**

**U.S.C. § 2254.**  A claim for damages bearing that relationship to a conviction or sentence that has **not** been so invalidated is not cognizable under § 1983.  Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the validity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.  *Heck,* 512 U.S. at 487.

Thus, a prisoner plaintiff must establish as a threshold requirement that the challenged conviction or sentence was terminated in his favor.  *Heck*, therefore, prevents convicted criminals from using § 1983 as a collateral attack on their convictions.

Subsequently, the Supreme Court evaluated the applicability of *Heck* to § 1983 claims implicating prison disciplinary convictions in *Edwards v. Balislok,* 520 U.S. 641 (1997).  In *Edwards,* a prisoner claimed he was denied an opportunity to present a defense in a prison disciplinary hearing, and that the hearing officer who hear the disciplinary case was biased, resulting in his conviction of a disciplinary violation and a corresponding loss of good time credits.  *Id.* at 646-47.  The prisoner brought a § 1983 claim alleging a due process violation and seeking monetary damages, a declaratory judgment that the procedures violated due process, and injunctive relief.  *Id.* at 644. The Court found the nature of the prisoner's challenge implicated the invalidity of the disciplinary conviction and the deprivation of the prisoner's good time credits.  *Id.* at 646.  As a result, as in *Heck,* the Court held the prisoner stated no cognizable § *1983* claim unless and until the underlying disciplinary conviction was resolved in the prisoner's favor.  *Id.* at 646-47.  *But see, Muhammad v. Close,* 540 U.S. 749 (2004)

5

(rejecting notion that *Heck* applies categorically to all suits challenging disciplinary proceedings; instead *Heck* bars a collateral attack on a prison disciplinary conviction through § 1983 if the § 1983 claim would result in a reversal of a prison disciplinary conviction resulting in loss of good time credit).

To determine whether *Heck* bars Plaintiff's action in this case, a review of Colorado statutory and regulatory schemes is required.  In Colorado, there are two types of credits awarded to offenders– good time and earned time, both of which are implicated here.

Colorado provides good time credits to offenders "whose conduct indicates that he has substantially observed all of the rules and regulations of the institution or facility in which he has been confided and has faithfully performed the duties assigned to him." § **17-22.5-403, C.R.S.**   The impact of good time credits on an offender's sentence varies according to the date on which the offender's crime was committed.  For example, for offenders sentenced for crimes committed on or after July 1, 1979, but before July 1, 1981, good time credits vest quarterly and may not be withdrawn once vested. **§ 17-22.5-301(1), C.R.S.**   For such offenders, good time credits shorten the duration of their sentence by moving up the parole eligibility date in mandatory fashion. For offenders sentenced for crimes committed on or after July 1, 1985, however, good time credits do not vest and may be withheld or deducted by the DOC. ***See*** § **17-22.5-403, C.R.S.**   For such offenders, good time credits have a less direct impact on the prisoner's parole eligibility date, and the DOC has the discretion to determine whether such an inmate should be paroled. ***See, e.g., Rennecke v. Kautzky,*** 782 P.2d 343,

6

344-46 (Colo. 1989).  Thus, depending on the date of an inmate's offense, good time credits provide varying degrees of certainty as to the date an inmate is eligible for release from custody.

The other type of credit applied to Colorado prisoners' sentences is earned time credit.  Earned time is awarded to offenders who demonstrate substantial and consistent progress in categories such as work and training, group living, participation in counseling and group sessions, education programs, and progress toward the goals and programs established by the DOC's diagnostic programs.  *See* § **17-22.5-405, C.R.S.**  The Colorado Supreme Court in *Meyers v. Price,* 842 P.2d 229, 231-32 (Colo. 1992), interpreted § **17-22.5-402, C.R.S.,** to mean that earned time impacts only the parole eligibility date, rather than an inmate's sentence.

Defendants claim that the *Meyers* opinion fails to account for the totality of the statutory provisions governing earned time and the interpretation of the impact of earned time on the length of prisoners' sentences adopted by the DOC.   Specifically, § 17-22.5-405, C.R.S., provides that both incarcerated offenders and parolees can be awarded earned time.  Defendants argue that the award of earned time credits to parolees indicates that earned time may impact the sentence discharge date of the offender, rather than simply the parole eligibility date.

Further, Defendants argue that § **17-22.5-405(4), C.R.S.** implies that earned time could potentially reduce the actual sentence served by an offender: "[E]arned time may not reduce the sentence of any inmate. . . by a period of time which is more than twenty five percent of the sentence." § **17-22.5-405(4), C.R.S.**   Finally, the DOC has

7

interpreted the statutory provisions governing earned time as reducing an offender's sentence discharge date by one day up to a maximum reduction of twenty-five (25%) of the offender's total  sentence.   Thus, according to the DOC's interpretation, earned time credits actually reduce the sentence discharge date rather than the parole eligibility date.  § **17-22.5-405(1), C.R.S.**  According to the Defendant, this court should defer to the DOC's  interpretation regarding earned time because it is the agency charged with  implementation of those statutes.  *See Chevron U.S.A., Inc. v. Natural Ress. Def. Council, Inc.,* 467 US. 837 843-45 (1994); *U.S. v. Atandi,* 376 F.3d 1186, 1189 (10th Cir. 2004).

Based on the foregoing, Defendants claim that Plaintiff's § 1983 claims are barred by *Heck* and its progeny.   They conclude that Plaintiff's claims serve as a collateral attack on his sentence and, therefore, cannot be brought until Plaintiff has successfully challenged the removal of his credits.  Therefore, his claims are barred under *Heck.*

B.    **Application of** *Heck.*

On remand to this court, the Tenth Circuit Court instructed this court to make the following determinations:

1.    Whether deprivation of good time or earned time credits affects the duration of a Colorado state prisoner's confinement; and

2.    If so, does the *Heck* doctrine bar Plaintiff's § 1983 claims as improper collateral attack on his conviction and deprive this court of jurisdiction over them?

8

Plaintiff's Complaint alleges that he was retaliated against by the Defendants for seeking judicial review of his April 21, 1999, COPD conviction, his July 29, 1999, COPD conviction, and his subsequent placement in punitive segregation. As a result of his July 29, 1999, COPD conviction, Plaintiff was ineligible for and did not receive any award of earned time for the months of August and September 1999.   Defendants argue that this implicates the overall length of Plaintiff's sentence and, thus, **Heck** applies and deprives this court of jurisdiction over Plaintiff's claims.

Plaintiff responds that his Complaint does not address the disciplinary proceeding itself[1].  Nor does it address the effect of earned time on the length of his confinement/sentence.  Rather, Plaintiff claims that his § 1983 claims should survive under **Heck** because the claims challenge parole eligibility.  He claims that even if his claims prove successful, they may not necessarily result in immediate or speedier release date.  Plaintiff notes that even if all of his earned time is restored, and he is eligible for parole at an earlier date, parole determinations are discretionary, and his ultimate release date may remain unchanged.

Specifically, Plaintiff claims that even if his earned time is restored, his mandatory release date remains unchanged due to the limitation imposed on earned

---

[1] Plaintiff begins his argument by claiming that his Complaint is based on a retaliation claim, rather than an attack on his disciplinary conviction, thereby obviating the need for analysis of his § 1983 claim under **Heck.**  However, further review of Plaintiff's Complaint belies this argument.  Plaintiff specifically claims that he was improperly charged with a disciplinary conviction, and that the hearing on the disciplinary conviction was a "charade."  Pursuant to the holding in **Roberts v. Champion,** this court rejects Plaintiff's attempt to circumvent **Heck** by framing his attack on his disciplinary conviction as a "retaliation" claim. **See Roberts,** 91 Fed. Appx. 108 (10th Cir. 2004).

time under § **17-22.5-405(4), C.R.S.**   § **17-22.5-405(4)** caps the amount of earned

time to 25% of Plaintiff's sentence.  Even if Plaintiff's earned time is not restored,

Plaintiff maintains that he can still earn that amount during the remainder of his

sentence.   Therefore, his mandatory release date may remain unchanged.

Next, Plaintiff cites the Colorado Supreme Court findings in ***Meyers v. Price.***

842 P.2d at  231-32.  Again, the ***Meyers*** court interpreted § **17-22.5-402, C.R.S.,** to

mean that earned time impacts only the parole eligibility date, rather than a release

date.  Therefore, Plaintiff concludes that ***Heck*** is inapposite to his § 1983 claims

because he is not collaterally attacking his sentence length, but rather his parole

eligibility date pursuant to ***Meyers.***

The Court finds Plaintiff's reasoning and the Supreme Court of Colorado's

holdings in ***Meyers*** persuasive.   First, as Plaintiff argues, it may not matter to Plaintiff's

case whether earned time credits are applied to parole eligibility or the duration of his

sentence.  Plaintiff claims that his mandatory release date– the latest date that he can

be paroled– would not change even if he prevailed on his claims and his earned time

were restored.  Under such circumstances, § 1983 claims may remain available for

procedural challenges when the success of the action would not necessarily spell

immediate or speedier release from prison.  ***See Wilkinson v. Dotson,*** 125 S. Ct.

1242, 1247-48 (2005).  ***See also, Ramirez v. Galaza,*** 334 F.3d 850, 858 (9th Cir. 2003)

(when a prison's alleged constitutional error does not increase the prisoner's total

period of confinement, a successful § 1983 action would not necessarily result in an

earlier release date; therefore, the favorable termination rule of ***Hecks*** and ***Edwards***

10

does not apply); ***Muhammad,*** 540 U.S. at 751 (***Heck's*** favorable termination

requirement is not implicated by a prisoner's challenge that creates no consequences

for his conviction or sentence duration).  Therefore, to the extent Plaintiff's § 1983

claims, if successful, would not result in an earlier release date, his claims should

proceed.

Second, under Colorado law, good time and earned time credits do not

constitute service of sentence, but only serve to determine an inmate's parole eligibility

date. ***Thorson v. Colorado Dep't of Corrs.,*** 801 P.2d 540, 541 (Colo. 1990) (citations

omitted).  Therefore, the deprivation of Plaintiff's earned time credits does not

necessarily effect the duration of Plaintiff's confinement, but rather effects his parole

date eligibility.  ***See Meyers,*** 842 P.2d at 231-32 (interpreting § 17-22.5-402, C.R.S. to

mean that earned time impacts only the parole eligibility date and not a release date).

Therefore, the ***Heck*** doctrine does not bar Plaintiff's claims as an impermissible attack

on his disciplinary conviction.  Nor does it deprive this court of jurisdiction over

Plaintiff's claims.

### C.    Certification under C.A.R. 21.1.

Finally, Defendants argue that ***Meyers*** was wrongly decided, and the Colorado

Supreme Court would reverse its own error if presented with the record before this

court.  Accordingly, Defendants ask that this court certify the question for the Colorado

Supreme Court pursuant to **C.A.R. 21.1.**

**C.A.R. 21.1** provides in relevant part:

"The Supreme Court may answer questions of law certified to it by [a

11

federal court] ... if there is involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court." ***Common Sense Alliance v. Davidson*** 995 P.2d 748, 759 (Colo., 2000).

Unlike the facts in ***Common Sense,*** there is controlling precedent in the Colorado Supreme Court– ***Meyers.*** Defendants' subjective belief that ***Meyers*** was wrongly decided does not provide proper grounds for certification under **C.A.R. 21.1**.

Therefore, this court recommends that this court deny Defendants' request for certification of this issue under **C.A.R. 21.1**.

Accordingly, **IT IS RECOMMENDED** that this court find and conclude as follows:

1.  That Plaintiff's § 1983 claims are not an impermissible attack on his disciplinary conviction;

2.  That the ***Heck*** doctrine does not bar Plaintiff's claims;

3.  That this court has jurisdiction over Plaintiff's claims;

4.  That this court should decide the merits of Plaintiff's claims; and

5.  That Defendants' request for certification of this issue for the Colorado Supreme Court pursuant to **C.A.R. 21.1, BE DENIED**.

## IV.   Advisement to the Parties

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. **28 U.S.C. § 636(b)(1); F**ED**. R. C**IV**. P. 72(b)**; *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).

12

The district judge shall make a *de novo* determination of those specific portions of the proposed findings or recommendations to which specific objection is made. **28 U.S.C. § 636(b)(1)**.  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. ***See In re Griego***, 64 F.3d at 583;  ***United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma***, 73 F.3d 1057, 1060 (10th Cir. 1996).  The district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. **28 U.S.C. § 636(b)(1)**.

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." ***One Parcel of Real Property***, 73 F.3d at 1060.  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. ***See Vega v. Suthers***, 195 F.3d 573, 579-80 (10th Cir. 1999) (district court's decision to review a magistrate's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); ***One Parcel of Real Property***, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); ***International Surplus Lines Insurance Co. v. Wyoming Coal Refining Syss., Inc.***, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the

13

magistrate's order, cross-claimant had waived its right to appeal those portions of the ruling);   ***Ayala v. U.S.***, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate's ruling).

**DATED** at Denver, Colorado, this 3rd day of January, 2006.

BY THE COURT:

s/Craig B. Shaffer
Craig B. Shaffer
United States Magistrate Judge