IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 01-cv-01315-REB-CBS

LEONARD BALDAUF,
      Plaintiff,
v.

JOHN HYATT,
ROBERT FAHEY,
BETTY FULTON,
PAUL CARRERAS,
CONNIE DAVIS,
KENT MAESTAS,
[JOSEPH] GARCIA, and
DAVID ARCHULETA,
      Defendants.
_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

      This civil action comes before the court on Defendants' Motion for Summary Judgment (filed July 2, 2007) (doc. # 146). Pursuant to the Order of Reference filed October 23, 2001 (doc. # 14) and the memorandum dated July 30, 2007 (doc. # 148), this matter was referred to the Magistrate Judge. The court has reviewed the Motion, Mr. Baldauf's Response (filed September 24, 2007) (doc. # 153), Defendants' Reply (filed October 24, 2007) (doc. # 160), the exhibits, the entire case file, and the applicable law and is sufficiently advised in the premises.


I.     Procedural Background

      On July 11, 2001, Mr. Baldauf filed his *pro se* Complaint alleging claims pursuant to 42 U.S.C. §1983 for violations of his constitutional rights. (*See* doc. # 3). On November 19, 2001, all of the Defendants except Chad Nelson filed a Motion to Dismiss.[1] (*See* doc.

---

[1]    The claims against Defendants Chad Nelson and Unknown Property Officer were dismissed by the District Court without prejudice for failure to effect timely service

# 19).  On March 3, 2003, the Magistrate Judge issued a Recommendation to deny Mr. Baldauf's "Motion for Leave to Amend Complaint" (doc. # 24) and grant Defendants' Motion to Dismiss for the reasons that: (1) the physical injury requirement of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), barred Mr. Baldauf's claim for compensatory damages; (2) Mr. Baldauf stated no cognizable claim for punitive damages; (3) Mr. Baldauf's First Amendment retaliation claim failed to state a claim; (4) Mr. Baldauf's First Amendment retaliation claim was barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); (5) Mr. Baldauf's official capacity claims were barred by the Eleventh Amendment; (6) Defendants Neet, Masterson, Tappe, Martinez, Roberts, Zalman, Harlen and Claar lacked any personal participation or supervisory liability for any alleged retaliation; (7) Mr. Baldauf stated no cognizable conspiracy claim; and (8) Defendants were entitled to qualified immunity from Mr. Baldauf's claims because he failed to sufficiently allege any violation of a constitutional right.  (*See* Recommendation of United States Magistrate Judge (doc. # 30)).  Further, the Magistrate Judge recommended that Mr. Baldauf's Motion to Amend be denied on the basis that there was no material difference between the Complaint and the proposed Amended Complaint, and the proposed Amended Complaint failed to cure the legal defects identified in the Recommendation.  (*See id.*).

Mr. Baldauf filed his Objection to the Magistrate Judge's Recommendation on March 17, 2003.  (*See* doc. # 31).  On March 25, 2003, the District Judge issued an Order accepting and adopting the Magistrate Judge's Recommendation, denying Mr. Baldauf's Motion to Amend, granting Defendants' Motion to Dismiss, and dismissing the Complaint. (*See* "Order Adopting Recommendation [# 30] of United States Magistrate Judge" (doc. # 32)).  Mr. Baldauf filed a Notice of Appeal on April 24, 2003.  (*See* doc. # 34).

On January 26, 2005, the United States Court of Appeals for the Tenth Circuit

---

of process and failure to prosecute.  (*See* "Order Adopting Recommendation of United States Magistrate Judge" (doc. # 103) at p. 3 of 3).

issued an Order and Judgment on Mr. Baldauf's appeal, stating in pertinent part:

> As the parties agree, the threshold issue before us is whether the *Heck* doctrine, see *Heck v. Humphrey,* 512 U.S. 477 (1994), bars jurisdiction in this case. Whether *Heck* applies depends on whether deprivation of good-time or earned-time credits necessarily affects the duration of a Colorado prisoner's confinement. The record is inadequate to resolve this matter, and both counsel at oral argument sought remand to the district court for development of the record. Accordingly, we REMAND to the district court for further proceedings concerning whether, under the *Heck* doctrine, the district court has jurisdiction to hear Mr. Baldauf's claims. If the court determines that it has jurisdiction, it should decide the merits, conducting any further proceedings that it deems necessary.

*Baldauf v. Hyatt*, 120 Fed. Appx. 288 (citation omitted).

On remand, the Magistrate Judge held a status conference on August 10, 2005. The Magistrate Judge directed the parties to submit jurisdictional briefs on the *Heck* issue raised by the Tenth Circuit's remand. Defendants filed their Jurisdictional Brief on September 12, 2005. (*See* doc. # 65). Mr. Baldauf filed his Brief on Jurisdiction on September 14, 2005. (*See* doc. # 68). The parties filed responses to the jurisdictional briefs. (*See* docs. # 69 and # 70). On January 3, 2006, the Magistrate Judge issued a second Recommendation that Mr. Baldauf's claims were not barred by the *Heck* doctrine and that the court therefore had subject matter jurisdiction to review Mr. Baldauf's claims. (*See* doc. # 71). Both parties filed Objections to the Magistrate Judge's Recommendation. (*See* docs. # 72, # 73, and # 74). On February 8, 2006, the District Judge accepted and adopted the Magistrate Judge's Recommendation. (*See* doc. # 75).

On February 17, 2006, Defendants filed their "Motion to Dismiss Plaintiff's Complaint," renewing their arguments regarding the merits of Mr. Baldauf's claims. (*See* doc. # 76). Defendants incorporated by reference all of the arguments and authorities presented in their first Motion to Dismiss (doc. # 19) and in their previous Reply Brief (doc. # 27). (*See* doc. # 76). The Magistrate Judge issued a third Recommendation that Defendants' Motion be granted in part and denied in part by: (1) dismissing Mr. Baldauf's Claim II; (2) dismissing with prejudice Mr. Baldauf's claims against Defendants in their

official capacities, as barred by the Eleventh Amendment; (3) dismissing with prejudice Defendants Neet, Masterson, Tappe, Martinez, Roberts, Zalman, Romero, Harlen, Carr, and Claar based on qualified immunity; (4) denying Mr. Baldauf's request for compensatory damages as barred by the physical injury requirement of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e); (5) denying Mr. Baldauf's request for punitive damages for failure to allege a cognizable basis; and (6) dismissing Defendants Nelson and Unnamed Property Officer in the event that Mr. Baldauf failed to comply with the court's Order to Show Cause why they should not be dismissed for failure to effect service and failure to prosecute. (*See* Order and Recommendation of United States Magistrate Judge (doc. # 92)).   The Magistrate Judge recommended that this action proceed on Mr. Baldauf's Claim I against Defendants "Fahey, Hyatt, other unnamed officers, Carreras, Davis, Fulton, Maestas, Garcia, and Archuleta. . . ." (*See* doc. # 92 at p. 3 of 3).

Both parties filed Objections to the Magistrate Judge's Recommendation. (*See* docs. # 97, # 98, # 99, and # 100).  On September 21, 2006, the District Judge accepted and adopted the Magistrate Judge's Recommendation.   (*See* "Order Adopting Recommendation of United States Magistrate Judge" (doc. # 103)).  Mr. Baldauf filed a Notice of Appeal (doc. # 109) on October 23, 2006 that was dismissed on December 8, 2006 for lack of appellate jurisdiction because the District Judge's Order did "not dispose of all claims against all parties and no certification under Rule 54(b) has been granted by the district court." (*See* doc. # 118).

On March 1, 2007, the Magistrate Judge directed that this case be placed on a list of cases for which counsel may volunteer to represent a *pro se* party. (*See* doc. # 130). On March 12, 2007, counsel entered his appearance on behalf of Mr. Baldauf. (*See* doc. # 133).  Discovery, including Mr. Baldauf's deposition, was concluded on May 31, 2007. (*See* doc. # 138 (granting Mr. Baldauf's Motion for Extension of Time to complete discovery)).  Defendants filed the instant Motion on July 2, 2007, Mr. Baldauf filed his

Response on September 24, 2007, and Defendants filed their Reply on October 24, 2007.

Now before the court is Mr. Baldauf's Claim I alleging retaliation based on the exercise of his First Amendment rights and seeking injunctive relief and nominal damages. (*See* Mr. Baldauf's Response to Defendants' first Motion to Dismiss (doc. # 25) at p. 1 (conceding "there is no denial-of-access-to-the-courts claim, but rather retaliation for exercise of that right."); "Order Adopting Recommendation of United States Magistrate Judge" (doc. # 103) (dismissing request for compensatory and punitive damages)). Mr. Baldauf claims that Defendants took disciplinary and other adverse action against him in retaliation for his exercise of his First Amendment rights. Defendants have moved for summary judgment on the basis that they are entitled to qualified immunity from Mr. Baldauf's Claim I alleging retaliation based on the exercise of his First Amendment rights.

II.     Mr. Baldauf's Allegations of Retaliation

Mr. Baldauf was incarcerated at Fremont Correctional Facility ("FCF") from January 1999 to March 2000, except for the time period from approximately November 4, 1999 through December 17, 1999. (*See* Mr. Baldauf's Response to Defendants' first Motion to Dismiss (doc. # 25) at p. 1; Deposition of Leonard Baldauf (Defendants' Exhibit A-1 (doc. # 146-2 at p. 2 of 34 and doc. # 146-3 at p. 19 of 34)). On June 16, 1999, Mr. Baldauf filed a lawsuit in Fremont County District Court against several prison employees, including several of the Defendants in this civil action. On July 15, 1999, Mr. Baldauf enlisted another inmate to attempt to serve Defendants Fahey and Hyatt with the state lawsuit. (*See* doc. # 146-2 at p. 7 of 34). Defendant Hyatt was a captain responsible for Cell Houses 4 and 5 at FCF during Mr. Baldauf's incarceration there. (*See* doc. # 146-2 at p. 3 of 34). Defendant Fahey was a lieutenant who worked primarily in Cell House 5 at FCF. (*See* doc. # 146-2 at p. 3 of 34). Mr. Baldauf alleges a list of 28 separate events that occurred at FCF and had a negative impact on him. Mr. Baldauf alleges that these events

occurred in retaliation for his attempted service on Defendants Fahey and Hyatt on July 15, 1999. (*See* doc. # 146-2 at pp. 9, 22-23 of 34; Defendants' Interrogatory No. 6 (doc. # 146-5 at p. 3 of 8); Mr. Baldauf's Response to Interrogatory No. 6 (doc. # 146-6) at pp. 2-4 of 6; Mr. Baldauf's Response (doc. # 153) at p. 6 of 13).

On July 15, 1999, following the attempted service on Defendants Hyatt and Fahey, Mr. Baldauf was called in from the yard for a meeting with Defendants Hyatt and Fahey. (*See* doc. # 146-2 at p. 10 of 34). Mr. Baldauf alleges that Defendants Hyatt and Fahey were angry about the attempted service and during the meeting called him names, used profanity, and threatened him. (*See* doc. # 146-2 at pp. 11-12 of 34; Complaint (doc. # 3) at eighth page; Defendants' Interrogatory No. 2 (doc. # 146-5 at p. 3 of 8); Mr. Baldauf's Response to Interrogatory No. 2 (doc. # 146-6) at p. 1 of 6). Mr. Baldauf alleges that after the meeting with Defendants Hyatt and Fahey, various inmates and correctional officers warned him that he may suffer retaliation. (*See* doc. # 146-2 at p. 13 of 34; Defendants' Interrogatory No. 3 (doc. # 146-5 at p. 3 of 8); Mr. Baldauf's Response to Interrogatory No. 3 (doc. # 146-6) at pp. 1-2 of 6).

On July 20, 1999, correctional officers conducted a search of Mr. Baldauf's cell. (*See* doc. # 146-2 at pp. 14-16 of 34; Defendants' Interrogatory No. 4 (doc. # 146-5 at p. 3 of 8); Mr. Baldauf's Response to Interrogatory No. 4 (doc. # 146-6) at p. 2 of 6). Mr. Baldauf was found to have contraband and was charged with a violation of the Code of Penal Discipline (COPD). Following a hearing, Mr. Baldauf was convicted of a COPD violation. Mr. Baldauf alleges that Defendant Hyatt retaliated against him for the attempted service by charging him but not his cellmate with a COPD violation. (*See* doc. # 146-2 at p. 24 of 34; Mr. Baldauf's Response to Interrogatory No. 6(B) (doc. # 146-6) at p. 2 of 6). The conviction was upheld on appeal by the District Court and the Colorado Court of Appeals and the Colorado Supreme Court did not accept review. (*See* doc. # 146-2 at pp. 16-18 of 34; Complaint (doc. # 3) at eighth page; Defendants' Exhibits A-5, A-6, A-7, and

A-8 (docs. # 146-7, # 146-8, # 146-9, and # 146-10)).

Mr. Baldauf alleges that during the time he was in segregation in Cell House 5 from July 29, 1999 through August 23, 1999, staff refused to provide him with adequate changes of underwear and his attempts to obtain underwear were ignored, in retaliation. (*See* doc. # 146-2 at pp. 29-32 of 34; Mr. Baldauf's Response to Interrogatory No. 6(D) (doc. # 146-6) at p. 2 of 6). Mr. Baldauf also alleges that he wrote to Defendant Hyatt and other prison officials, asserting that his probation should not have been revoked as part of his punishment for the COPD conviction. (*See* doc. # 146-2 at p. 33 of 34; Mr. Baldauf's Response to Interrogatory No. 6(E) (doc. # 146-6) at p. 2 of 6). Mr. Baldauf raised this argument as a ground for the unsuccessful appeal of his COPD conviction. (*See* Defendants' Exhibit A-8 (doc. # 146-10)).

Mr. Baldauf alleges that Defendants Carreras, Davis, and Garcia changed their attitudes toward him "from civil to hostile, derisive, contemptuous, indifferent following" July 15, 1999. (Mr. Baldauf's Response to Interrogatory No. 6(F) (doc. # 146-6) at p. 2 of 6; *see also* doc. # 146-3 at pp. 1-2 of 34).[2] Defendant Carreras "turned his back and walked away when I tried to discuss a cell move . . . ." (Mr. Baldauf's Response to Interrogatory No. 6(G) (doc. # 146-6) at p. 2 of 6; *see also* doc. # 146-3 at p. 2 of 34). Mr. Baldauf alleges that Defendant Carreras' conduct was retaliation because it demonstrated Defendant Carreras' change in attitude toward him after July 15, 1999. (*See* doc. # 146-3 at p. 3 of 34).

Mr. Baldauf alleges that he was retaliated against when he was charged and convicted of a COPD violation and placed in segregation from September 11, 1999 through September 28, 1999 for an incident involving inmate Eric Jaquermard. (*See* doc.

---

[2]     Defendant Davis was a sergeant on the day shift in Cell House 4 at FCF. (*See* doc. # 146-2 at p. 5 of 34). Defendant Garcia was a sergeant on the day shift in Cell House 4 at FCF. (*See* doc. # 146-2 at p. 6 of 34). Defendant Carreras was a sergeant on the day shift in Cell House 4 at FCF. (*See* doc. # 146-3 at p. 1 of 34).

# 146-3 at p. 3 of 34;  Mr. Baldauf's Response to Interrogatory No. 6(H), (I), and (J) (doc. # 146-6) at p. 2 of 6; Defendants' Exhibits A-9, A-10, A-11, A-12, A-13 (docs. # 146-11, # 146-12, # 146-13, # 146-14, # 146-15)).  Mr. Baldauf alleges retaliation based on his placement in segregation before being charged with a COPD violation.  (*See* doc. # 146-3 at pp. 4-5 of 34;  Mr. Baldauf's Response to Interrogatory No. 6(I) (doc. # 146-6) at p. 2 of 6).

Mr. Baldauf alleges that Defendant Fahey and other staff again refused to provide him with adequate changes of underwear during the time he was in segregation from September 11, 1999 through September 28, 1999.  (*See* doc. # 146-3 at pp. 5-6 of 34; Mr. Baldauf's Response to Interrogatory No. 6(K) (doc. # 146-6) at p. 2 of 6).  Mr. Baldauf alleges that on September 14, 1999, Defendant Fahey threw a grievance back into his cell and refused to answer it.  (*See* doc. # 146-3 at pp. 29-30 of 34; Mr. Baldauf's Response to Interrogatory No. 6(AA) (doc. # 146-6) at p. 3 of 6).  Mr. Baldauf alleges that Defendant Garcia retaliated against him on September 12, 1999 when he discarded and lost some of Mr. Baldauf's property but did not discard or lose Mr. Jaquermard's property.  (*See* doc. # 146-3 at pp. 6-7 of 34;  Mr. Baldauf's Response to Interrogatory No. 6(L) (doc. # 146-6) at pp. 2-3 of 6).  Mr. Baldauf filed a grievance regarding the loss of this property that was denied.  (*See* doc. # 146-3 at pp. 7-10 of 34; Defendants' Exhibits A-14, A-15 (docs. # 146-16, # 146-17)).

Mr. Baldauf alleges that Defendant Davis retaliated against him by firing him from his prison job doing grounds maintenance.  (*See* doc. # 146-3 at pp. 11-12 of 34; Defendants' Exhibits A-14, A-15 (docs. # 146-16, # 146-17)).  Mr. Baldauf also alleges that Defendants Davis and Carreras retaliated against him by requiring him to share a cell with inmate Shelby Carrigan, with whom he had prior conflicts.  (*See* doc. # 146-3 at p. 13 of 34; Mr. Baldauf's Response to Interrogatory No. 6(P) (doc. # 146-6 at p. 3 of 6)).

An altercation between Mr. Baldauf and Mr. Carrigan occurred on October 21, 1999

that resulted in COPD charges against both Mr. Baldauf and Mr. Carrigan. (*See* doc. # 146-3 at pp. 13-18 of 34; Defendants' Exhibits A-19, A-20, A-21, A-22, A-23, A-24, A-25 (docs. # 146-21, # 146-22, # 146-23, # 146-24, # 146-25, # 146-26, # 146-27)). Mr. Baldauf alleges that in retaliation, Defendant Hyatt arranged for Defendant Maestas to file COPD charges against him. (*See* doc. # 146-3 at pp. 18-19 of 34; Mr. Baldauf's Response to Interrogatory No. 13 (doc. # 146-6 at p. 4 of 6)).[3] Mr. Baldauf alleges that in retaliation, Defendant Carreras provided false testimony at the hearing on the COPD charges. (*See* doc. # 146-3 at p. 32 of 34; Mr. Baldauf's Response to Interrogatory No. 13 (doc. # 146-6 at p. 4 of 6)).

Mr. Baldauf alleges that when he returned to FCF on December 17, 1999, Defendant Archuleta retaliated against him by filing a false charge that he threatened to kill a staff member. (*See* doc. # 146-3 at pp. 20-22 of 34; Mr. Baldauf's Response to Interrogatory No. 6(R) (doc. # 146-6 at p. 3 of 6); Defendants' Exhibits A-26, A-27, A-28, A-29, A-30 (docs. # 146-28, # 146-29, # 146-30, # 146-31, # 146-32)).[4] Mr. Baldauf alleges that he was not provided property such as stamps, envelopes and his address book while he was in segregation in December 1999. (*See* doc. # 146-3 at pp. 23-25 of 34). Mr. Baldauf alleges that Defendant Fahey threw his mail "through hatch to floor instead of handing it to me like other prisoners, then loudly slam hatch." (*See* doc. # 146-3 at p. 25 of 34; Mr. Baldauf's Response to Interrogatory No. 6(U) (doc. # 146-6 at p. 3 of 6)). Mr. Baldauf alleges that on February 1, 2000, Defendant Fahey improperly handled a money order for a court filing fee that resulted in a delayed filing and extra postage. (*See* doc. # 146-3 at pp. 25-26 of 34; Mr. Baldauf's Response to Interrogatory No. 6(V) (doc. # 146-6 at p. 3 of 6); Defendants' Exhibits A-31, A-32 (docs. # 146-33, # 146-34)).

---

[3]   Defendant Maestas was an investigator who investigated COPD charges. (*See* doc. # 146-2 at pp. 5-6 of 34).

[4]   Defendant Archuleta was a security officer on the day shift at FCF. (*See* doc. # 146-2 at p. 6 of 34).

Mr. Baldauf alleges that in 2000, Defendant Fahey refused to allow him to mop the floor after his toilet backed up, leaving it to dry. (*See* doc. # 146-3 at p. 26 of 34; Mr. Baldauf's Response to Interrogatory No. 6(W) (doc. # 146-6 at p. 3 of 6)). Mr. Baldauf alleges that Defendant Fahey gave him a food tray missing the entree and refused to correct it, stating "tough - this is prison." (*See* doc. # 146-3 at p. 27 of 34; Mr. Baldauf's Response to Interrogatory No. 6(X) (doc. # 146-6 at p. 3 of 6)).

Mr. Baldauf alleges that Defendant Fulton falsely alleged in administrative segregation reviews she performed that he committed verbal abuse and disregarded the rules. (*See* doc. # 146-3 at pp. 28, 31-32 of 34; Mr. Baldauf's Response to Interrogatory No. 6(Y) and No. 12 (doc. # 146-6 at pp. 3, 4 of 6); Defendants' Exhibits A-33, A-34, A-35, A-36 (doc. # 146-35, # 146-36, # 146-37, # 146-38)).[5] Finally, Mr. Baldauf alleges that Defendant Hyatt threatened him for going over his head to communicate with the Warden. (*See* doc. # 146-3 at p. 28-29 of 34; Mr. Baldauf's Response to Interrogatory No. 6(Z) (doc. # 146-6 at pp. 3-4 of 6)).

III.     Standard of Review for Qualified Immunity

Defendants have moved for summary judgment on the basis that they are entitled to qualified immunity. Under the doctrine of qualified immunity, government officials are immune from civil damages liability for constitutional torts as long as their actions were reasonably consistent with the rights they are alleged to have violated. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). "Such immunity is qualified in that it does not obtain when otherwise immune officials violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Armijo v. Wagon Mound Public Schools,* 159 F.3d 1253, 1260 (10th Cir. 1998) (internal quotation marks and citation

---

[5]     Defendant Fulton was a case manager in Cell House 5 at FCF. (*See* doc. # 146-2 at p. 4 of 34).

omitted).

"When the defense of qualified immunity is raised in a summary judgment motion, we apply special rules to determine whether the motion was properly granted or denied." *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004) (internal quotation marks and citation omitted).

> Specifically, [t]he plaintiff initially bears a heavy two-part burden [and] must show (1) that the defendant's actions violated a constitutional . . . right, and (2) that the right allegedly violated [was] clearly established at the time of the conduct at issue. Unless the plaintiff carries its twofold burden, the defendant prevails. Thus, our first inquiry must be whether a constitutional right would have been violated on the facts alleged. . . . If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. (Order is important; we must decide first whether the plaintiff has alleged a constitutional violation, and only then do we proceed to determine whether the law was clearly established.).

*Reynolds*, 370 F.3d at 1030 (internal quotation marks and citations omitted).


IV.    Standard of Review for Retaliation Based on First Amendment Rights

"[G]overnment action which chills constitutionally protected speech or expression contravenes the First Amendment." *Wolford v. Lasater*, 78 F.3d 484, 488 (10th Cir. 1996). "It has long been recognized that the lawful resort to the courts is part of the First Amendment right to petition the Government for a redress of grievances." *Berryman v. Rieger*, 150 F.3d 561, 566-67 (6th Cir. 1998).

To sustain a claim for abridgement of First Amendment rights, the plaintiff must show that the defendants retaliated against him for exercising a constitutionally protected right. "[I]n order to establish a First Amendment retaliation claim, a prisoner must demonstrate that he was (1) engaged in protected conduct; (2) that he suffered an adverse action; and (3) that a causal connection exists between the protected conduct and the adverse action." *Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004) (citation omitted). *See also Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003) ("To state a valid claim for

retaliation under § 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation."

Prison "officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights . . . even where the action taken in retaliation would be otherwise permissible." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (internal quotation marks and citation omitted). Nevertheless, "an inmate is not inoculated from the normal conditions of confinement . . . merely because he has engaged in protected activity." *Id.* "[A] plaintiff must prove that but for the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place." *Id.* (internal quotation marks and citation omitted).

V.      Analysis

Assuming without specifically deciding that Mr. Baldauf engaged in protected conduct by attempting to serve Defendants Hyatt and Fahey with a state court lawsuit, the court must determine whether Mr. Baldauf has demonstrated that the Defendants' actions violated a constitutional right. *See Reynolds*, 370 F.3d at 1030. Defendants argue that Mr. Baldauf has not established that Defendants acted based on any retaliatory motive or that but for a retaliatory motive any of the alleged conduct would not have occurred.

The court concludes that Mr. Baldauf has not offered sufficient evidence to prove a causal connection between the attempted service on Defendants Hyatt and Fahey and the retaliatory events he alleges. "The third element of a retaliation claim is a causal connection between the protected conduct and the adverse action. This element is satisfied where the adverse action was motivated at least in part by the plaintiff's protected conduct." *Brown v. Crowley*, 312 F.3d 782, 790 (6th Cir. 2002) (internal quotation marks and citation omitted). Mr. Baldauf's "burden is high." *Babcock v. White*, 102 F.3d 267, 275

(7th Cir. 1996). He "must establish that his protected conduct was a motivating factor . . . , but that should not end the inquiry." *Babcock*, 102 F.3d at 275. "Because the ultimate question is whether events would have transpired differently absent the retaliatory motive, it will not suffice" for Mr. Baldauf to show that Defendants' desire to retaliate played a substantial part in the conduct he alleges. *Babcock*, 102 F.3d at 275. "[T]here is no claim" if Defendants can show that the alleged events would have occurred absent his protected activity. *Babcock*, 102 F.3d at 275.

Mr. Baldauf alleges Defendants Hyatt and Fahey retaliated against him by the shakedown of his cell on July 20, 1999. It is undisputed that neither Defendant Hyatt nor Defendant Fahey personally participated in the cell shakedown. Nor has Mr. Baldauf produced sufficient evidence that Defendant Hyatt or Defendant Fahey directed the cell shakedown. Mr. Baldauf's only evidence of any connection between the attempted service of the state lawsuit and the cell shakedown is "[b]y inference" or "just an impression" from the alleged nonspecific warnings he heard from correctional officers and inmates about possible retaliation. (*See* doc. # 146-2 at pp. 13, 19-21 of 34). These warnings may not properly be used to defeat Defendants' summary judgment motion. *See Adams v. American Guarantee and Liability Ins. Co*, 233 F.3d 1242, 1246 (10th Cir. 2000) ("In order to survive summary judgment, the content of the evidence that the nonmoving party points to must be *admissible*.") (citation omitted) (emphasis in original). "Hearsay testimony that would be inadmissible at trial cannot be used to defeat a motion for summary judgment because a third party's description of a witness' supposed testimony is not suitable grist for the summary judgment mill." *Adams*, 233 F.3d at 1246 (internal quotation marks and citations omitted). *See also Zwygart v. Board of County Commissioners of Jefferson County, Kansas*, 483 F.3d 1086, 1092-93 (10th Cir. 2007) ("As double hearsay -- Mr. Zwygart said that his cardiologist said -- this passage is inadmissible under Fed.R.Evid. 802 and therefore 'not sufficient to defeat a motion for summary judgment' ") (citation

omitted); *Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1555 (10th Cir. 1995) (holding that "Rule 56 precludes the use of inadmissible hearsay testimony in depositions submitted in support of, or in opposition to, summary judgment."). Other than temporal proximity and his personal belief, Mr. Baldauf has not demonstrated any connection between Fahey and Hyatt and the search conducted by Nelson and other unnamed officers. Temporal proximity is insufficient, without more, to establish retaliatory motive. *Butler v. City of Prairie Village, Kansas*, 172 F.3d 736, 746 (10th Cir. 1999) (citations omitted).

Mr. Baldauf further alleges that Defendant Hyatt retaliated against him by charging him but not his cellmate with a COPD violation after the cell shakedown. Mr. Baldauf acknowledges that contraband was found in his cell, although he alleges that he did not know it was contraband. (*See* doc. # 146-2 at p. 16 of 34; Defendants' Exhibits A-5, A-6, A-7 (docs. # 146-7, # 146-8, # 146-9)). In a First Amendment retaliation claim, an inference of retaliatory motive may be undermined by evidence of intervening events. *Deschenie v. Board of Education of Central Consolidated School District No. 22*, 473 F.3d 1271, 1278 (10th Cir. 2007) (internal quotation marks and citation omitted). The retaliation inquiry should also "be undertaken in light of the general tenor of *Sandin*, which specifically expressed its disapproval of excessive judicial involvement in day-to-day prison management." *Babcock*, 102 F.3d at 275 (internal quotation marks and citation omitted). "[W]e should afford appropriate deference and flexibility to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Babcock*, 102 F.3d at 275 (internal quotation marks and citation omitted). Following a hearing, Mr. Baldauf was convicted of a COPD violation. The conviction was upheld on appeal by the District Court and the Colorado Court of Appeals and the Colorado Supreme Court did not accept review, thus breaking any causal connection between the protected activity and Defendant Hyatt's conduct. (*See* doc. # 146-2 at pp. 16-18 of 34; Complaint (doc. # 3) at eighth page; Defendants' Exhibits A-5, A-6, A-7, and

A-8 (docs. # 146-7, # 146-8, # 146-9, and # 146-10)).  *See Smith v. Denver Public School Board*, 767 F. Supp. 226, 230 (D. Colo. 1991) (impartial administrative law judge's finding of teacher incompetence broke any causal connection of retaliation between board of education and teacher).

Further, Mr. Baldauf attempts to hold Defendant Hyatt liable based merely on his supervisory position.  (*See* doc. # 146-2 at p. 24 of 34 (Defendant Hyatt "was the supervising officer who approved the notice of charges")).  A defendant may not be held liable merely because of his or her supervisory position.  *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996).  Individual liability under § 1983, regardless of the particular constitutional theory, must be based upon personal responsibility.  *See Foote v. Spiegel*, 118 F.3d 1416, 1423-24 (10th Cir. 1997) (individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation) (citation omitted); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (personal participation is an essential allegation in a civil rights action) (citation omitted); *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) ("Personal participation is an essential allegation in a § 1983 claim.").

Mr. Baldauf alleges that Defendants Hyatt and Fahey retaliated against him by failing to provide him adequate clothing while he was in segregation between July 29, 1999 and August 23, 1999 and between September 11, 1999 and September 28, 1999. However, Mr. Baldauf has not produced any evidence that Defendants Hyatt or Fahey knew of or directed any effort to deprive him of appropriate clothing.  Mr. Baldauf represents that he raised the issue with Defendant Fahey on one occasion and that Defendant Fahey responded that "we're looking into it."  (*See* doc. # 146-2 at p. 31 of 34). Mr. Baldauf cannot hold Defendant Hyatt liable based merely on his supervisory position. (*See* doc. 3 146-2 at p. 32 of 34 ("Again, just the inference.  It's his cell house.")).  Nor has Mr. Baldauf demonstrated that any conduct by staff in Cell House 5 between July 29, 1999

and August 23, 1999 was at the request of Defendants Hyatt or Fahey. (*See* doc. # 146-3 at p. 30 of 34 ("Again, just the differential treatment and – and no other explanation or inference.")).

Mr. Baldauf alleges that Defendant Hyatt retaliated against him by failing to respond to a letter wherein Mr. Baldauf argued that his probation was improperly revoked as a result of his COPD conviction. Mr. Baldauf has not established that Defendant Hyatt received the letter or that he had the authority to alter a COPD penalty. Further, Mr. Baldauf pursued this argument in his unsuccessful appeal of the COPD conviction, breaking any causal connection between the protected activity and Defendant Hyatt's conduct. *See Smith*, 767 F. Supp. at 230.

Mr. Baldauf alleges that Defendant Hyatt retaliated against him by removing him from population but not charging him with a COPD violation for 12 days. Mr. Baldauf concedes that Lieutenant Rudder, not Defendant Hyatt, made the decision to remove him from population. (*See* doc. # 146-3 at p. 5 of 34). The Notice of Charges was initiated by Sergeant Tollis. (*See* Defendants' Exhibits A-9, A-10, A-11 (docs. # 146-11, # 146-12, # 146-13)). Defendant Hyatt was merely the reviewing supervisor for the Notice of Charges. (*See* Defendants' Exhibit A-11 (doc. # 146-13)). Nor can Mr. Baldauf demonstrate that he suffered any injury from the alleged 12-day delay in initiating the COPD charge. *See Scott v. Kelly*, 107 F. Supp. 2d 706, 709 (E.D. Va. 2000) ("plaintiff must demonstrate that he suffered some adverse impact or actual injury"). Mr. Baldauf was convicted of a COPD violation as a result of the Notice of Charges. His penalty was 17 days segregation and he received credit for the 12 days served. (*See* Defendants' Exhibit A-12 (doc. # 146-14)).

Mr. Baldauf further alleges that Defendant Hyatt retaliated against him by arranging for a COPD charge to be filed against him regarding an altercation with inmate Carrigan. Again, Mr. Baldauf has not demonstrated that Defendant Hyatt participated in this charge. The evidence shows that Defendant Maestas filed the COPD charge against Mr. Baldauf

and that Defendant Hyatt did not review the charge. (*See* Defendants' Exhibits A-19, A-21, A-22, A-23 (docs. # 146-21, # 146-23, # 146-24, # 146-25)).

Mr. Baldauf alleges that Defendant Maestas also retaliated against him by filing the COPD charge regarding the altercation with inmate Carrigan. (*See* Defendants' Exhibit A-23 (doc. # 146-25)). Mr. Baldauf has not presented any evidence that Defendant Maestas was aware of his protected activity on July 15, 1999. The COPD charge was initiated on or about October 22, 1999, approximately three months after Mr. Baldauf's alleged protected activity. In a First Amendment retaliation claim, an inference of retaliatory motive may be undermined by a long delay between the protected activity and the challenged conduct. *Deschenie*, 473 F.3d at 1278 (internal quotation marks and citation omitted). The evidence shows that following a hearing on the charge, Mr. Baldauf was convicted of a COPD violation and the conviction was upheld in an administrative appeal (*see* Defendants' Exhibit A-24 (doc. # 146-26)), thus breaking any causal connection between the protected activity and Defendant Maestas' conduct. *See Smith*, 767 F. Supp. at 230. Mr. Baldauf alleges that Defendant Garcia retaliated against him by discarding his food and losing some of his property when he packed it on September 12, 1999 but not discarding Mr. Jacquermard's property despite packing it at the same time. Mr. Baldauf offers no evidence of a causal connection between the two events or that Defendant Garcia knew about his protected activity on July 15, 1999.

Mr. Baldauf alleges that Defendant Hyatt retaliated against him by arranging for a COPD charge to be filed against him regarding a threat to a staff member. Again, Mr. Baldauf's evidence does not demonstrate that Defendant Hyatt participated in this charge. (*See* doc. # 146-3 at pp. 33-34 of 34 ("while I was still in the office area, [Defendant Archuleta] went into Hyatt's office"). Mr. Baldauf cannot establish retaliation with mere conclusory allegations. "Conclusory allegations by a non-movant will not suffice" to establish the existence of a triable issue of fact under Fed. R. Civ. P. 56. *United States*

*v. Simons*, 129 F.3d 1386, 1388 (10th Cir. 1997) (citation omitted).

Mr. Baldauf alleges that on or about December 17, 2000, Defendant Archuleta retaliated against him by filing a false charge that he made a threat to kill a staff member. (*See* doc. # 146-3 at pp. 20-22 of 34; Mr. Baldauf's Response to Interrogatory No. 6(R) (doc. # 146-6 at p. 3 of 6). Mr. Baldauf has not presented any evidence that Defendant Archuleta was aware of his protected activity on July 15, 1999. This COPD charge was initiated approximately five months after Mr. Baldauf's alleged protected activity. An inference of retaliatory motive may be undermined by a long delay between the protected activity and the challenged conduct. *Deschenie*, 473 F.3d at 1278 (internal quotation marks and citation omitted). The evidence further shows that after Defendant Archuleta initiated the charge, a supervisor reviewed the charge, a hearing officer convicted Mr. Baldauf of the charge at a disciplinary hearing, and the conviction was upheld in an administrative appeal, thus breaking any causal connection with Defendant Archuleta's conduct. (*See* Defendants' Exhibits A-26, A-27, A-28, A-29, A-30 (docs. # 146-28, # 146-29, # 146-30, # 146-31, # 146-32)).

Mr. Baldauf alleges that Defendant Carreras retaliated against him by declining his request to be assigned a different cell than Mr. Carrigan and by providing false testimony at the COPD hearing involving the altercation with Mr. Carrigan. However, Mr. Baldauf has not presented any evidence that Defendant Carreras was aware of his protected activity on July 15, 1999 or that the refusal to assign him a different cell was related to his protected activity. Further, the evidence shows that Defendant Carreras was the prosecutor at the COPD hearing and did not provide testimony. Following a hearing on the charge, Mr. Baldauf was convicted of a COPD violation and the conviction was upheld in an administrative appeal (*see* Defendants' Exhibit A-24 (doc. # 146-26)), thus breaking any causal connection between the protected activity and Defendant Carreras' conduct. *See Smith*, 767 F. Supp. at 230.

Mr. Baldauf alleges that Defendant Davis refused his request to be reassigned a different cell than Mr. Carrigan. Mr. Baldauf offers no evidence of a causal connection between the two events or that Defendant Davis knew of the protected activity on July 15, 1999. Mr. Baldauf's evidence that "[g]enerally, the response to any question of a cell move was ['t]oo bad[']" does not support his allegation that he was specifically denied a cell move in retaliation.

Mr. Baldauf alleges that Defendant Davis also retaliated against him by firing him from his landscaping job. However, the evidence shows that Defendant Davis fired Mr. Baldauf from his prison job based on a fight that occurred with inmate David Farence. (*See* doc. # 146-3 at p. 12 of 34; Defendants' Exhibits A-16, A-17, A-18 (docs. # 146-18, # 146-19, # 146-20)). Nor does Mr. Baldauf offer any evidence of a causal connection between his alleged protected activity on July 15, 1999 and Defendant Davis' conduct.

Mr. Baldauf alleges that Defendant Fahey retaliated against him by throwing a grievance in his cell and refusing to answer it on September 14, 1999. Defendant Fahey's conduct was three months after July 15, 1999. Simply because Defendant Fahey was present at both events does not establish a causal connection between the two events. Mr. Baldauf cannot refute Defendants' Motion for Summary Judgment with mere conclusory allegations. "[T]he court may insist that the plaintiff put forward specific, nonconclusory factual allegations that establish improper motive causing cognizable injury in order to survive a prediscovery motion for dismissal or summary judgment." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (internal quotation marks and citation omitted).

Mr. Baldauf alleges several incidents of retaliation in 2000. Mr. Baldauf alleges that Defendant Fulton retaliated against him beginning in January 2000 by falsely alleging in reviews she prepared that he committed verbal abuse and disregarded FCF rules. The timing of Fulton's conduct was distant from July 15, 1999 and Mr. Baldauf offers no evidence that Defendant Fulton knew about the incident on July 15, 1999. Mr. Baldauf's

evidence is insufficient to create a genuine issue as to Defendant Fulton's knowledge of his protected activity. *See Adusumilli v. City of Chicago*, 164 F.3d 353, 363 (7th Cir. 1998) (a plaintiff may establish a causal link between protected expression and an adverse action through evidence that the discharge took place on the heels of protected activity); *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 668 (7th Cir. 2006) ("proof of retaliation . . . presupposes that the decision-maker knew that the plaintiff engaged in a statutorily protected activity).

Mr. Baldauf alleges that in 2000 Defendant Fahey refused to allow him to mop the floor after his toilet backed up, leaving it to dry. (*See* doc. # 146-3 at p. 26 of 34; Mr. Baldauf's Response to Interrogatory No. 6(W) (doc. # 146-6 at p. 3 of 6)). Mr. Baldauf alleges that in 2000 Defendant Hyatt retaliated against him by threatening him for going over his head to communicate with the warden. These events were distant from July 15, 1999. Mr. Baldauf had been housed at a facility other than FCF between November 4, 1999 through December 17, 1999. Mr. Baldauf has failed to produce direct or indirect evidence of a chronology of events pointing to these Defendants' intent to retaliate against him for exercising a constitutional right.

For additional reasons the court concludes that Mr. Baldauf has not demonstrated a claim for retaliation. Mr. Baldauf alleges that Defendants Carreras, Davis, and Garcia displayed a hostile attitude toward him. (*See, e.g.*, Mr. Baldauf's Response to Interrogatory No. 6(G) (doc. # 146-6) at p. 2 of 6 (Defendant Carreras "turned his back and walked away when I tried to discuss a cell move . . . ."); doc. # 146-3 at pp. 1-2 of 34; Mr. Baldauf's Response to Interrogatory No. 6(F) (doc. # 146-6) at p. 2 of 6). Such conduct does not rise to retaliation. *See Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001) ("Insulting or disrespectful comments directed at an inmate generally do not rise" to the level of an adverse action); *Giba v. Cook*, 232 F. Supp. 2d 1171, 1192 (D. Or. 2002) ("alleged threatening tone does not rise to retaliation"). Nor has Mr. Baldauf established

a causal connection between the attempted service on July 15, 1999 and Defendant Carreras' action in September 1999.  (*See* doc. # 146-3 at p. 3 of 34 ("I listed that as a specific instance of a change in demeanor.  This is somebody that I had spoken to on a civil basis before, and suddenly that was the kind of treatment I was getting.").

The court further concludes that Mr. Baldauf's allegations that: (1) he was deprived of property such as stamps, envelopes and his address book while he was in segregation in December 1999, (2) Defendant Fahey "would throw [his mail] through hatch to floor instead of handing it to me like other prisoners, then loudly slam hatch," (3) Defendant Fahey improperly handled a money order for him a court filing fee that resulted in a delayed filing and extra postage, and (4) Defendant Fahey gave him a food tray missing the entree and refused to correct, stating "tough - this is prison" do not rise to retaliation.  (*See, e.g.,* doc. # 146-3 at pp. 23-26 of 34; Mr. Baldauf's Response to Interrogatory Nos. 6(U), 6(V), 6(X) (doc. # 146-6 at p. 3 of 6)); Defendants' Exhibits A-31, A-32 (docs. # 146-33, # 146-34)).  *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (in prison setting, the action taken [must be] sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights) (internal quotation marks and citation omitted);  *Johnson v. Kingston*, 292 F. Supp. 2d 1146, 1152 (W.D. Wis. 2003) ("a court may deny an inmate leave to proceed if the allegedly retaliatory act is not one that could be said to have had the effect of deterring an inmate 'of ordinary firmness' from engaging in similar activity.") (internal quotation marks and citation omitted).

Mr. Baldauf alleges these numerous events occurred due to retaliation.  However, many of these events are within the normal conditions of confinement.  "[I]t is not the role of the federal judiciary to scrutinize and interfere with the daily operations of a state prison, and our retaliation jurisprudence does not change this role."  *Peterson*, 149 F.3d at 1144.

As Mr. Baldauf has not established a claim for retaliation, Defendants are entitled to qualified immunity from Mr. Baldauf's single remaining claim in this action.

VI.    Fed. R. Civ. P. 56(f)

Mr. Baldauf argues that "Defendants' Motion should be denied because Mr. Baldauf's ability to conduct the type of discovery necessary to oppose the Motion has been substantially impaired by his incarceration at a facility other than FCF." (Mr. Baldauf's Response (doc. # 153) at p. 11 of 13). Mr. Baldauf argues that he "has been unable to prepare affidavits in opposition to the Defendants' Motion" pursuant to Fed. R. Civ. P. 56(f) and that his "counsel also has not had an opportunity to depose Defendants or any other individuals . . . ." (Mr. Baldauf's Response (doc. # 153) at p.11 of 13).

Fed. R. Civ. P. 56(f) provides:

> **When Affidavits Are Unavailable.**  Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

The decision to grant additional discovery pursuant to Fed. R. Civ. P. 56(f) is within the trial court's discretion. *Patty Precision v. Brown & Sharpe Mfg. Co.*, 742 F.2d 1260, 1264 (10th Cir. 1984). *See also Pfenninger v. Exempla, Inc.*, 116 F. Supp. 2d 1184, 1194 (D. Colo. 2000) ("The district courts exercise discretion in deciding whether to grant a Rule 56(f) motion.").

As the party relying on Rule 56(f), Mr. Baldauf must file an affidavit explaining why he cannot present facts to oppose the motion for summary judgment. *See International Surplus Lines Ins. Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 905 (10th Cir. 1995) ("Although the Supreme Court has held that, under Fed.R.Civ.P. 56(f), summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition, this protection arises only if the nonmoving party files an affidavit explaining why he or she cannot present facts to oppose the motion."). The absence of an affidavit is sufficient grounds to deny the request. *See*

*Committee for First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992) ("[C]ounsel's unverified assertion in a memorandum opposing summary judgment does not comply with Rule 56(f) and results in a waiver.") (citing *Pasternak v. Lear Petroleum Exploration, Inc.*, 790 F.2d 828, 832-33 (10th Cir. 1986) ('Where a party opposing summary judgment and seeking a continuance pending completion of discovery fails to take advantage of the shelter provided by Rule 56(f) by filing an affidavit, there is no abuse of discretion in granting summary judgment if it is otherwise appropriate.")). Here, Mr. Baldauf presents no affidavit in support of his Rule 56(f) request. For this reason alone, Mr. Baldauf's request under Rule 56(f) is properly denied.

"To obtain relief under Rule 56(f), a party must . . . identify with some degree of specificity the facts it believes will be uncovered through additional discovery." *Pfenninger*, 116 F. Supp. 2d at 1194 (citation omitted). *See also Ben Ezra, Weinstein, & Company, Inc. v. America Online Inc.*, 206 F.3d 980, 987 (10th Cir. 2000) ("Fed. R. Civ. P. 56(f) requires that the party seeking to invoke its protection state with specificity how the additional material will rebut the summary judgment motion. A party may not invoke Fed. R. Civ. P. 56(f) by merely asserting that discovery is incomplete or that specific facts necessary to oppose summary judgment are unavailable. Rather, the party must demonstrate precisely how additional discovery will lead to a genuine issue of material fact.") (citations omitted). "[M]ere assertion that discovery is incomplete or that specific facts necessary to oppose summary judgment are unavailable" is insufficient to invoke Rule 56(f). *International Surplus Lines Ins. Co.*, 52 F.3d at 905. Mr. Baldauf makes a general request for additional discovery that fails to meet the requirements of Rule 56(f). Mr. Baldauf generally argues that his status as an incarcerated person and the fact he was transferred from FCF have hampered his ability to obtain affidavits to address Defendants' arguments. Mr. Baldauf fails to identify what facts useful to opposing Defendants' motion for summary judgment he believes will be uncovered through additional discovery. *See*

*Pfenninger*, 116 F. Supp. 2d at 1194. For this reason also, Mr. Baldauf's request under Rule 56(f) is properly denied.

The record demonstrates that Mr. Baldauf had ample opportunity to conduct discovery. On November 13, 2006, the court set a discovery cut-off of February 13, 2007. (*See* doc. # 117). At a motions hearing on March 1, 2007, the court extended discovery until March 30, 2007. (*See* doc. # 128). Counsel entered his appearance on behalf of Mr. Baldauf on March 12, 2007. (*See* doc. # 133). On March 14, 2007, the court granted Mr. Baldauf's request for an extension of time and extended discovery until May 31, 2007. (*See* doc. # 138). On August 10, 2007, the court granted Mr. Baldauf's request for an extension of time to respond to Defendants' motion for summary judgment to September 24, 2007. (*See* doc. # 151). Mr. Baldauf did not request any further extensions. Mr. Baldauf filed his Response (doc. # 153) on September 24, 2007. Mr. Baldauf has not adequately explained any specific reasons that he was unable to present facts essential to his opposition to Defendants' motion for summary judgment. Mr. Baldauf's argument pursuant to Rule 56(f) fails.

VII.    Defendants "Other Unnamed Officers"

The Federal Rules of Civil Procedure provide:

> "[i]f service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period. . . .

Fed. R. Civ. P. 4(m). The Complaint was filed on or about July 11, 2001. As of this date, more than six years has passed since the filing of the Complaint and Mr. Baldauf has never identified or served Defendants "other unnamed officers." (*See* "Order Adopting Recommendation of United States Magistrate Judge" (doc. # 103)). For this reason, Defendants "other unnamed officers" may properly be dismissed.

24

There is no provision in the Federal Rules of Civil Procedure for the naming of fictitious or anonymous parties in a lawsuit. *Watson v. Unipress, Inc.*, 733 F.2d 1386, 1388 (10th Cir. 1984); *Coe v. U.S. Dist. Court for Dist. of Colorado*, 676 F.2d 411, 415 (10th Cir. 1982). To the contrary, the Federal Rules provide:

> "[e]very pleading shall contain a caption setting forth the name of the court, the title of the action, the file number, and a designation as in Rule 7(a). In the complaint, the title of the action shall include the names of all the parties . . . ."

Fed. R. Civ. P. 10(a). For this reason also, Defendants "other unnamed officers" may properly be dismissed.

Accordingly, IT IS RECOMMENDED that Defendants' Motion for Summary Judgment (filed July 2, 2007) (doc. # 146) be GRANTED and that judgment on Claim I, the only remaining claim in the Complaint, be entered in favor of all Defendants and against Mr. Baldauf.

**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings

and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 27th day of December, 2007.

BY THE COURT:

    s/Craig B. Shaffer
United States Magistrate Judge